UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**MICHAEL L. BROWN,**               )
                                    )
     **Plaintiff,**     )
                                    )
     v.                )   Civil Action No. 10-0247 (ESH)
                                    )
**U.S. DEPARTMENT OF JUSTICE, et al.,** )
                                    )
     **Defendants.**    )
_____ )

## MEMORANDUM OPINION

Plaintiff Michael Brown has sued the U.S. Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff is an inmate at the United States Prison in Tucson, Arizona, and is proceeding *pro se*. Plaintiff seeks access to all records concerning a third party, Victor A. Caldwell. The FBI contends that records responsive to plaintiff's request are exempt from production under FOIA Exemptions (b)(6) and (b)(7)(C). As such, the FBI now moves for summary judgment. Upon consideration of the parties' submissions and the entire record, the Court will grant the FBI's motion for summary judgment.

## BACKGROUND

On July 2, 2009, plaintiff submitted a "third-party request" seeking access to all records at FBI Headquarters ("FBIHQ") pertaining to Victor Caldwell.[1] (Decl. of David M. Hardy ["Hardy Decl."] ¶ 5.) Plaintiff's request included a signed privacy waiver from Caldwell. (*Id.*;

---

[1] In particular, plaintiff seeks drug test results during and after Caldwall's incarceration and logs reflecting visitors he received. (Hardy Decl., Ex. A.)

*see also id.*, Ex. A.)  The FBI advised plaintiff that it had received his request by letter on August 6, 2009.  (*Id.* ¶ 6.)  Plaintiff then submitted additional correspondence asking for access to all information on Victor Caldwell, including records at the Milwaukee Field Office.  (*Id.* ¶¶ 7-8.)

On September 23, 2009, the Record/Information Dissemination Section ("RIDS") in the Records Management Division ("RMD") of the FBI initiated its standard protocol for verifying the privacy waiver from Caldwell submitted by plaintiff.  (*Id.* ¶ 16.)  According to David M. Hardy, the Section Chief of RIDS, the Section was concerned about the validity of Caldwell's signature on the privacy waiver based on its "institutional knowledge and prior experience dealing with similar requests."  (*Id.*)  As a result, RIDS personnel sent an electronic communication to the BI Chicago Field Office to ask that a Special Agent contact Caldwell to verify the validity of his signature.  (*Id.* ¶ 17; *see also* Decl. of Special Agent Jeffrey B. Moore ["Moore Decl."] ¶ 3.)  Special Agent ("SA") Jerry Moore was selected to contact Caldwell by telephone.  (Hardy Decl. ¶ 17.)  SA Moore was selected to communicate with Caldwell because SA Moore had established a prior relationship with Caldwell and was able to recognize his voice during telephone conversations.  (Moore Decl. ¶ 3.)

In October 2009, SA Moore called Caldwell using a telephone number in SA Moore's records.  (*Id.* ¶ 4.)  Once he had recognized Caldwell's voice and confirmed his identity, SA Moore discussed the privacy waiver submitted by plaintiff.  (*Id.*)  SA Moore explained to Caldwell that the waiver meant that, upon request, plaintiff would be provided access to any of Caldwell's files that the FBI had in its possession.  (*Id.*)  According to SA Moore, although Caldwell indicated that he had signed the waiver, he had not been aware of what it meant to "waive his right to privacy of his FBI files."  (*Id.* ¶ 5.)  Hence, Caldwell "indicated that he did not want any FBI files released to anyone at th[at] time" and that "he wished to withdraw his consent

2

to the privacy waiver." (*Id.* ¶ 6.) Another special agent from the Chicago Field Office, SA Frank Bochte, informed RIDS personnel of the content of the conversation between SA Moore and Caldwell on November 13, 2009. (*Id.* ¶ 7.)

On December 2, 2009, and again on March 31, 2010, the FBI informed plaintiff by letter that it would be unable to process his request for information on a third party because Caldwell had withdrawn his privacy waiver. (*Id.* ¶ 9.) The FBI stated that it had

> determined that disclosure of the records [plaintiff] requested would constitute a clearly unwarranted invasion of personal privacy pursuant to FOIA Exemption (b)(6), 5 U.S.C. § 552(b)(6); and could reasonably be expected to constitute an unwarranted invasion of personal privacy pursuant to FOIA Exemption (b)(7)(C), 5 U.S.C. § 552(b)(7)(C).

(Hardy Decl., Ex. J.) Plaintiff filed his complaint on February 18, 2010. The FBI filed a motion for summary judgment on June 4, 2010. Attached to defendants' motion are declarations from David M. Hardy and SA Jeffrey Moore.

## ANALYSIS

The FBI contends that it has properly invoked appropriate FOIA exemptions in declining to process plaintiff's request for documents concerning Caldwell and that it acted in good faith in ensuring that Caldwell's privacy waiver was valid before proceeding. (Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. ["Def.'s Mem."] at 5-7, 9.) As such, it argues that it is entitled to summary judgment. Plaintiff opposes the FBI's motion on two grounds: 1) the FBI's bad faith in "attempting to influence Caldwell after confirming [his] signature on the release authorization"; and 2) the FBI's premature claims that records it has not searched for are exempted from production. (Opp'n to Def.'s Mot. for Summ. J. ["Opp'n"] at 1, 4.) The Court will review these challenges in turn.

3

## I. STANDARD OF REVIEW

"FOIA cases appropriately may be decided on motions for summary judgment." *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007). Summary judgment should be granted to the movant if it has shown, when the facts are viewed in the light most favorable to the nonmovant, that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *see also Fischer v. Dep't of Justice*, 596 F. Supp. 2d 34, 39-40 (D.D.C. 2009) ("In a FOIA case, summary judgment may be granted to the government if 'the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'") (quoting *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). To prevail in a FOIA action, the agency must show that it made "'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Oglesby v. U.S. Dep't of Army,* 920 F.2d 57, 68 (D.C. Cir. 1990)).

A requester may challenge the government's showing by "set[ting] out specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e), that would permit a reasonable jury to find in his favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). However, agency affidavits "are afforded a presumption of good faith," and an adequate affidavit "can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Defenders of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) (quoting *Trans Union LLC v. Fed. Trade Comm'n*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001)). In other words, a requester cannot

rebut the good faith presumption through "'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). But "if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order." *Weisberg v. Dep't of Justice*, 627 F.2d 365, 370 (D.C. Cir. 1980) (internal quotation marks omitted).

## II. FBI'S COMMUNICATIONS WITH CALDWELL

Plaintiff contends that "[w]hile the FBI may corroborate the signature on a release authorization, nothing in FOIA authorizes FBI to continue explaining to the signatory FBI's interpretation of the implications of the release authorization." (Opp'n at 1.) As such, he argues that the act of the FBI in "continuing to hold Caldwell on the telephone, and to further inquire into Caldwell's actions and reasoning—after Caldwell had confirmed his signature—was impermissible and an act of bad faith on the agency's part." (*Id.* at 2.) He further maintains that SA Moore "did not contact Caldwell solely to confirm his signature," but to "influence Caldwell and thereafter provide a declaration in an attempt to induce this Court to ignore" the original signed privacy waiver. (*Id.* at 2-3.) Plaintiff then postulates that "FBI simply does not want to release these records" because they concern the FBI's handling of its informants (such as Caldwell). (*Id.* at 3-4.)

Plaintiff's speculation that the FBI impermissibly attempted to convince Caldwell to withdraw his privacy waiver, without any evidence of misconduct or bad faith on the part of defendant, is insufficient to overcome the presumption of good faith the Court must accord to the declarations from Hardy and SA Moore. *See Safecard Servs., Inc.*, 926 F.2d at 1200

5

("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'") (quoting *Ground Saucer Watch, Inc.*, 692 F.2d at 771. Hardy states in his declaration that when RIDS is concerned with the validity of a third-party privacy waiver, it has a "standard protocol" for verifying the waiver, which it used in this instance. (Hardy Decl. ¶ 16.) There is nothing in the FOIA statute (nor does plaintiff cite any case law) suggesting that a government agency may not authenticate privacy waivers, or that it may not ensure that a signatory to such a waiver understands the implications of that waiver.[2] Plaintiff's argument that SA Moore has "provided no signed withdrawal of [Caldwell's] release" is similarly unavailing, as there is nothing in FOIA suggesting that the FBI may not implement a policy that allows someone who has signed a privacy waiver to revoke that signature verbally to an FBI agent. Nor is there any requirement that the FBI "prove" Caldwell's revocation via a signed document, absent any evidence of bad faith. SA Moore's signed declaration, describing his contact with Caldwell and stating that Caldwell "did not want any FBI files released to anyone at th[at] time" (Moore Decl. ¶ 6), is sufficient. *See Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) ("Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'") (quoting *Gardels v. CIA,* 689 F.2d 1100, 1105 (D.C. Cir. 1982), and *Hayden v. NSA,* 608 F.2d 1381, 1388 (D.C. Cir. 1979)).

"Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by

---

[2] FOIA criminalizes the use of "false pretenses" in the request or attainment of records under the statute, suggesting that falsification of records in support of a FOIA request does occur and that the FBI, the Department of Justice, and other agencies have an obligation to ensure that they do not release documents in reliance on such documents. *See* 5 U.S.C. § 552a(i)(3).

either contrary evidence in the record nor by evidence of agency bad faith." *Miller v. Casey,* 730 F.2d 773, 776 (D.C. Cir. 1984). The Court finds that the declarations submitted by Hardy and SA Moore adequately demonstrate that Caldwell no longer consents to the release of his FBI records to plaintiff. Because plaintiff presents no evidence to refute the facts as set forth by these declarations, and because there is no indication that the FBI has acted in bad faith, plaintiff's speculation that the FBI improperly contacted or influenced Caldwell is unpersuasive.

### III. PREMATURE CLAIMS OF EXEMPTION

In its December 2009 response to plaintiff's request for documents concerning Caldwell, the FBI stated that because Caldwell had withdrawn his privacy waiver, defendant was "unable to process [his] request." (Hardy Decl. Ex. E.) In its March 2010 response, the FBI further stated that without a privacy waiver, "disclosure of the records [plaintiff] requested would constitute a clearly unwarranted invasion of personal privacy pursuant to [FOIA Exemptions (b)(6) and (b)(7)][3]." (*Id.*, Ex. J.) Plaintiff argues that because the FBI has not yet conducted a search for responsive records, its attempt to claim FOIA exemptions is premature. (Opp'n at 4.) Plaintiff further contends that in order to claim such exemptions, the "FBI must first conduct the search, explain the search terms utilized, describe the . . . records systems searched, provide the number of records, indicate the records that are withheld-in-full, and reasonably produce records that are withheld-in-part." (*Id.*) He maintains that the FBI's failure to complete these steps

---

[3] Exemption (b)(6) applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption (b)(7)(C) applies to "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.*, § 552(b)(7)(C).

7

means that plaintiff "has no basis to evaluate the claimed exemptions, nor does the Court have a basis to evaluate FBI's claims." (*Id.*)

The FBI's refusal to process plaintiff's request for records constitutes a "Glomar" response. "If an individual is the target of a FOIA request, the agency to which the FOIA request is submitted may provide a 'Glomar' response: the agency may refuse to confirm or deny the existence of records or information responsive to the request on the ground that even acknowledging the existence of responsive records constitutes an unwarranted invasion of the targeted individual's personal privacy." *Robinson v. Attorney General of the U.S.*, 534 F. Supp. 2d 72, 82 (D.D.C. 2008) (citing *Nation Magazine,* 71 F.3d at 893, and *Phillippi v. CIA,* 546 F.2d 1009, 1014-15 (D.C. Cir. 1976)); *see also Gardels,* 689 F.2d at 1103 ("We have . . . agreed that an agency may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under a FOIA exception."). Here, the FBI contends that confirmation of the existence of the records requested by plaintiff—to wit, any FBI files concerning Caldwell—would "constitute a clearly unwarranted invasion of personal privacy" of the type FOIA Exemptions (b)(6) and (b)(7)(C) were enacted to prevent. (Hardy Decl., Ex. J.)

### A.  Caldwell's Privacy Interest

Despite its stated goal of agency disclosure in enacting FOIA, Congress "underst[ood] that disclosure of records containing personal details about private citizens can infringe significant privacy interests." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 766 (1989). Further, "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation," and the "privacy interests of the persons mentioned in [] investigatory files do not necessarily diminish with the passage of time." *Branch v. FBI*, 658 F. Supp. 204, 209 (D.D.C. 1987). Thus,

"Exemption 7(C) 'affords broad[] privacy rights to suspects, witnesses, and investigators.'" *Safecard Servs., Inc.*, 926 F.2d at 1205 (quoting *Bast v. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981)). "[P]ersons involved in FBI investigations—even if they are not the subject of the investigation—'have a substantial interest in seeing that their participation remains secret.'" *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (quoting *King v. U.S. Dep't of Justice*, 830 F.2d 210, 233 (D.C. Cir. 1987)). "Exemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity." *Id.* (internal quotation omitted). Accordingly, there is a significant privacy interest in the names and identifying information of parties contained in the FBI files at issue. *Martin v. U.S. Dep't of Justice*, 488 F.3d 446, 457 (D.C. Cir. 2007) ("'[T]hird parties who may be mentioned in investigatory files' and 'witnesses and informants who provide information during the course of an investigation' have an 'obvious' and 'substantial' privacy interest in their information.") (quoting *Nation Magazine*, 71 F.3d at 894).

Here, Section Chief Hardy states in his second declaration that "if [the FBI] had any information responsive to plaintiff's request, it is reasonably likely to be contained in criminal investigative files of the FBI's [CRS]" and that "no other record system within the FBI would reasonably contain information about Mr. Caldwell."[4] (Second Decl. of David M. Hardy ["Second Hardy Decl."] ¶ 8.) Given this information, the Court finds that Caldwell has a strong privacy interest in keeping his possible involvement with the FBI generally, as well as the information possibly contained in the documents specifically requested by plaintiff, private. As

---

[4] Hardy's declaration also states that "[g]iven plaintiff's prior request for his own records as well as his current request, it is highly unlikely that any records on Mr. Caldwell would exist in FBI personnel files," but even if such personnel records did exist in the FBI's files, they "would still be exempt from disclosure pursuant to Exemptions 6 and 7(C)." (Second Hardy Decl. ¶ 8.)

9

Section Chief Hardy notes, "a response from the FBI that either confirms . . . the existence of records on Mr. Caldwell would associate him with criminal activity." (*Id.*) Consequently, confirmation of the existence of records concerning Caldwell in the FBI's files, even if the FBI did not release them, would constitute an unwarranted violation of his privacy. *See Fitzgibbon*, 911 F.2d at 767; *Branch*, 658 F. Supp. at 204.

### B. Public Interest in Documents Concerning Caldwell

Upon a finding that there is a privacy interest in the withholding of documents responsive to a FOIA request, "[t]he government may nonetheless be required to disclose the documents if the individual seeking the information demonstrates a public interest in the information that is sufficient to overcome the privacy interest at issue. *Boyd v. Criminal Div. of the U.S. Dep't of Justice*, 475 F.3d 381, 386-87 (D.C. Cir. 2007) (citing *Reporters Comm.,* 489 U.S. at 762, 776). "In order to trigger the balancing of public interests against private interests, a FOIA requester must (1) 'show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) 'show the information is likely to advance that interest.'" *Id.* at 387 (quoting *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 172 (2004)). "[P]rivacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated." *Martin*, 488 F.3d at 457 (citing *Reporters Comm.,* 489 U.S. at 780) ("privacy interest protected by Exemption 7(C) is . . . at its apex while the FOIA-based public interest in disclosure is at its nadir" when requester seeks a private citizen's criminal history information within the government's control); *see also Fitzgibbon*, 911 F.2d at 768 (rarely does a public interest outweigh an individual's privacy interest when law enforcement information pertaining to an individual is sought).

Here, plaintiff has not attempted to articulate a public interest in the release of FBI documents concerning Caldwell. However, in earlier FOIA requests made by plaintiff to the FBI, plaintiff suggested that he was involved in "ongoing litigation(s)" and that the requested documents are responses to "possible questions about the government's integrity which affected public confidence." (Hardy Decl., Ex. A at 3.) Assuming that plaintiff seeks documents responsive to his request in order to challenge his conviction and/or bring to light possible government misconduct, the Court finds that plaintiff has not demonstrated that either of these reasons constitute a "significant" public interest in documents concerning Caldwell. There is no indication that responsive documents would reveal government wrongdoing. *See Boyd*, 475 F.3d at 388 (affirming withholding of documents pursuant to Exemption (b)(7)(C) where plaintiff made only "[u]nsubstantiated assertions of government wrongdoing" in support of his claim that FOIA disclosures were necessary because government had violated discovery obligations). Moreover, plaintiff's personal interest personal interest in obtaining potentially exculpatory documents in order to attack his conviction "does not count in the calculation of public interest." *Oguaju v. U.S.*, 288 F.3d 448, 450 (D.C. Cir. 2002), *vacated and remanded on other grounds,* 541 U.S. 970 (2004), *reinstated*, 378 F.3d 1115 (D.C. Cir. 2004); *see also Engelking v. DEA*, 119 F.3d 980, 980-81 (D.C. Cir. 1997); *Johnson*, 758 F. Supp. at 5; *Neely v. FBI*, 208 F.3d 461, 464 (4th Cir. 2000).

Consequently, the Court finds that there is no public interest in the release of FBI documents concerning Caldwell, if they exist. Absent a public interest to weigh against the private interest Caldwell has in the withholding of these documents, the Court finds that the FBI's Glomar response to plaintiff's request, declining to process his claim for documents concerning a third party, is appropriate.

## CONCLUSION

For the reasons stated above, the Court will grant defendant's motion for summary judgment. A separate Order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: October 7, 2010